THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO MONTANER, Defendant and Appellant.

No. 9546. Argued November 10, 1942.—Decided November 30, 1942.

*R. Aviles Moréu* and *Ramón G. Goyco* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The appellant was sentenced to five years' imprisonment at hard labor for the offense of subornation of perjury. In support of his appeal he alleges that the trial court committed five errors. We shall only discuss the first and the third assignments; the former, because it deals with a jurisdictional question and the latter because it charges insufficiency of the evidence. In the first assignment the appellant urges that (*a*) he was not assisted by counsel during the arraignment nor was he informed of the provisions of §141 of the Code of Criminal Procedure; (*b*) he was forced to enter trial despite the fact that he alleged he was sick; and (*c*) that he was actually deprived of the assistance of counsel due to the negligent manner in which the attorney was

appointed, without having sufficient time to prepare the defense.

 With regard to the arraignment, the following appears from the record: "The defendant Antonio Montaner, on arraignment, on July 29, 1937, pleaded not guilty and asked for a trial by jury."

From the record, there is no showing that on arraignment the defendant was not represented by counsel or did not intelligently waive his assistance. Either thing could have happened and it need not appear from the record. Since we are dealing with a court of general jurisdiction such as the lower court, there exists the presumption that it acted with jurisdiction and the regularity attached to the proceedings of the court. *Bank of Commerce & Trust Co. v. Kenney,* 165 P. (Cal.) 8; *People v. McClennegen et al.,* 234 P. (Cal.) 91; see also *People v. Rodríguez,* 46 P.R.R. 245.

Moreover, in *Johnson v. Zerbst,* 304 U. S. 458, 465, and *Franzeen v. Johnston, Warden,* 111 F. (2) 817, 820, the latter cited in *Dijols v. Lugo, Warden,* 58 P.R.R. 449, it was held that, although the better practice would be that it should affirmatively appear from the record that the defendant was offered the assistance of counsel and that he refused the same intelligently, or accepted it, as the case might be, however, said showing is not indispensable for the validity of the judgment.

 In order to have a better understanding of the arguments set up in subdivisions (*b*) and (*c*) of the first assignment of error, we must outline in brief an incident which took place immediately before the commencement of the trial.

When the case was called for trial, since the defendant had no attorney, the court appointed Attorney Córdova Rivera to represent him. Then said attorney, immediately after his appointment, addressed the court and stated that

the defendant wished to make it known that he had been sick in bed and that on the preceding Friday he had sent by mail a medical certificate and that his condition was such that he did not feel able to defend himself in a proper manner. In answer to this, the court expressed itself thus: That the information in this case had been filed against several defendants, who had been delaying the trial, first, by applying for postponements which had been granted, and later by moving for separate trials. That on the day set for trial, in the previous term, the defendant had appeared and moved for a continuance of the trial on the ground that he did not have an attorney. That the court, when granting the motion, and aware that the defendant, his father, and other relations were solvent, advised him that it would not continue the case again and that he had to appear assisted by counsel on the next date set for trial. That on said day, that is, on the day that the trial was held again, the defendant, who had been summoned fifteen or twenty days before, did not appear, and on that very morning, announced, through his brother, that he was sick and could not attend trial. That the court ordered him to be arrested and he was brought to the court; that the defendant did not seem to be sick and unfit for trial, for which reason it refused to grant the continuance sought and ordered the trial to proceed.

The defendant did not object and took no steps whatsoever to prove that he was in fact sick, and from the record it appears that the proceedings were had with due regularity.

In our opinion the trial court did not err in refusing to grant the continuance under the recited conditions. If the defendant really felt sick, to such an extent that he could not undergo a trial, he was bound to prove his illness, for it may happen, as it seems in the instant case, that the defendant would resort to this trick to obtain once more a postponement of the trial. If the defendant were in fact solvent, as the court stated in uncontradicted fashion, it was

his duty to be ready at the trial with his attorney, especially when, as the court said, he had been sumomend to the hearing fifteen or twenty days in advance. The defendant can not allege that he has been deprived of his right to assistance of counsel. He had ample opportunities to obtain one, and if he chose not to do so as a means to secure the continuance of the trial, no one but himself is to blame and he should suffer the natural consequences of his bad faith. The constitutional guaranty of assistance of counsel does not require a court to appoint an attorney for defendants who have ample means to pay for such services. Since the defendant was not insolvent, when the court appointed Attorney Córdova Rivera, it did so without being bound to do it. In view of the special circumstance of this case, the court could have held the trial without the defendant being assisted by counsel.

██ Let us now consider the third assignment of error. The offense charged against the defendant was subornation of perjury. In order that this offense may exist, it is necessary to prove, beyond a reasonable doubt (a) that a person committed perjury, and (b) that the defendant induced or encouraged the commission of perjury. The first element, that is, the falsity of the testimony, is the *corpus delicti* in the offense of subornation of perjury. It is necessary to prove the falsity of the testimony, because if the defendant induces or encourages the witness to tell the truth and he does so, naturally the defendant commits no offense.

Section 36 of the Penal Code provides that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid or abet in its commission, or not being present, have advised and encouraged its commission, are principals in any crime so committed. Therefore, the person who induces another, as well as the person who is induced by the latter to testify falsely, is guilty of perjury, and such persons may be indicted and

tried together for said offense, as was held by the Supreme Court of the United States in the case of *Hammer* v. *United States*, 271 U. S. 620. Besides, §18 of the Law of Evidence (§380 of the Code of Civ. Proc., 1933 ed.) provides that the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact *except perjury* or treason. Relying on this principle, a great majority of authorities have held that the uncorroborated testimony of the perjurer as to the falsity of his testimony is not enough to sustain a conviction against the suborner, although corroborative evidence is unnecessary to prove the other element of the offense, that is the subornation.

In the case at bar, José Archilla Piñero testified that he had given a sworn statement before the Justice of the Peace of Jayuya, while the latter was acting as a committing magistrate, charging the defendant in this and other cases with the offense of voluntary manslaughter committed against the person of a certain Auffant; and that subsequently he took another oath before the same justice of the peace, in the presence of the defendant and other persons, and, induced by the justice of the peace and by this defendant, he testified, falsely and knowingly making a false oath, that he, Archilla, did not know the persons that attacked Auffant, and thus exonerated defendant Montaner from all responsibility in connection with the death of Auffant.

The only evidence appearing from the record as to the falsity of this second testimony before the justice of the peace, is the uncorroborated testimony which Archilla himself gave in this case. Moreover, we know of his first statement given to the justice of the peace only by Archilla's own testimony, for said officer had died at the time of the trial of this case, and, according to Archilla, his first testimony was destroyed and substituted by the second one, and although the District Chief of the Insular Police, Mr. Emmanuelli, was called as a witness for the prosecution, he was

not examined as to the contents of the first statement that Archilla dictated to him at the typewriter.

The *Fiscal* of this court admits that the testimony of Archilla was not corroborated as to the perjury, but he maintains that in his opinion said corroboration was unnecessary, inasmuch as he thinks that the suborner and the perjurer are not accomplices and invokes the rule of the minority expressed at the end of the monograph which appears in 56 A.L.R. 407; §§131 and 132 of the Penal Code; and two cases of this court, *Forastieri* v. *Calzada,* 53 P.R.R. 238 and *People* v. *Montalvo,* 58 P.R.R. 316.

Section 131 of the Penal Code defines the offense of bribing witnesses and §132 that of witnesses receiving bribes, both of which are two distinct offenses, to such an extent that the offense defined by §132 may be committed without giving or offering any bribe, as for example, when a witness offers to receive any bribe upon the understanding that his testimony shall be influenced thereby, or that he will absent himself from the trial or proceeding in which his testimony is required. Such was the conclusion reached by this court in *Forastieri* v. *Calzada, supra,* wherein it was held that since giving and receiving a bribe are separate and distinct offenses, the giver and receiver of a bribe are not accomplices under the rule requiring corroboration of the testimony of an accomplice.

And the case of *People* v. *Montalvo, supra,* has no application either. It was held therein that in a proceeding for the sale of a firearm in violation of the statute regulating the same, the vendor and purchaser of the firearm are not accomplices for the purpose of the statute which requires the corroboration of the testimony of an accomplice. It was decided that the vendor and purchaser incurred in two distinct violations and, therefore, that they were not accomplices.

In the case of *Hammer* v. *United States, supra,* cited in the first part of the monograph in 56 A.L.R. 407, and relied on by the *Fiscal,* the facts are in substance similar to the ones in the case at bar. They are summarized thus: Annie Hammer was adjudged a bankrupt on April 28, 1923, and the proceeding was referred to one of the referees in bankruptcy in that district. The substance of the charge is that on October 25, 1923, petitioner suborned and induced Louis H. Trinz to take an oath before the referee and there falsely to testify that, prior to April 18, 1923, he had loaned $500 to the bankrupt and that she had given him a note therefor. At the trial it was satisfactorily shown that Trinz gave testimony in the bankruptcy proceeding which was later alleged to have been false, suborned by defendant Hammer. Trinz was the only witness called to prove the falsity of his own testimony and subornation. He testified that he gave the testimony alleged in the indictment, that it was not true, and that petitioner suborned him. At the close of all the evidence the petitioner Hammer moved the court to direct a verdict in her favor on the ground that the uncorroborated testimony of Trinz was not sufficient to warrant a finding of guilt. The motion was denied, and, on the request of the prosecution, the court charged the jury that the law did not require any corroboration of that testimony; and that, if believed, it was sufficient. After the defendant had been convicted and sentenced the case went on certiorari to the Supreme Court of the United States, and said court, in reversing the judgment of the Circuit Court of Appeals which had affirmed the judgment of the trial court, among other things, said that the general rule in prosecutions for perjury was that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment as perjury; that the application of that rule in federal and state courts is well-nigh universal; that to hold to the rule in perjury and to deny

its application in subornation cases would lead to unreasonable results; that §332 of the Federal Criminal Code abolishes the distinction between principals and accessories and makes them all principals; that one who induces another to commit perjury is guilty of subornation under §126 of the same code and, by force of §332, is also guilty of perjury. In other words, that subornation is the same as perjury; that one accused of perjury and another accused of subornation may be indicted and tried together; that obviously the same rule of evidence in respect of establishing the falsity of the matter alleged as perjury must apply to both; that evidence that is not sufficient to prove said falsity as against the one accused of perjury cannot reasonably be held to be enough as against the other who is accused of suborning of perjury; that no such distinction can be maintained; that falsity is as essential in one as in the other, since it is the *corpus delicti* in both.

■ It seems advisable to explain, as does the Supreme Court of the United States in the *Hammer* case, *supra,* that where our Law of Evidence provides that the direct evidence of one witness who is entitled to full credit is not sufficient to prove the falsity of any fact alleged to be false, it does not refer to the nature or degree of any proof which might be required to establish said fact. ''Undoubtedly,'' as stated by said court, ''documents emanating from the accused and the attending circumstances may constitute better evidence of such falsity than any amount of oral testimony.''

Since the evidence supporting the judgment appealed from is not sufficient, said judgment must be reversed and another rendered instead, discharging the defendant.