Dewayne L. GAFFNEY, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CF–1103.

District of Columbia Court of Appeals.

Argued Sept. 19, 2007.

Decided Sept. 17, 2009.

Mikel–Meredith Weidman, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Ann K.H. Simon, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III and Denise Cheung, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and PRYOR, Senior Judge.

GLICKMAN, Associate Judge:

Appellant Dewayne Gaffney challenges the sufficiency of the evidence to support his conviction for perjury before the grand jury. We agree that, under the special "two-witness" rule applicable to perjury prosecutions, the evidence was insufficient. On that ground, we reverse appellant's conviction.[1]

Appellant was indicted on two counts of perjury for statements he made under oath before a Superior Court grand jury investigating the murder of Michael Taylor. The target of the investigation, Harry Wheeler, was suspected of having ordered Taylor's murder in retaliation for his robbery of Wheeler's girlfriend, Brittany Johnson. Some $17,000–$27,000 of Wheeler's money allegedly was taken from Johnson in that robbery.

The first count of appellant's indictment charged him with having committed perjury when he told the grand jury that he did not know Harry Wheeler. The government elected to dismiss this count before trial. The second count of the indictment specified six other statements by appellant before the grand jury. The trial court granted appellant's motion for judgment of acquittal as to three of those statements on the ground that the government's evidence of their falsity did not satisfy the two-witness rule. The court permitted the jury to consider whether the three remaining statements supported the charge of perjury. Those three statements are the focus of the instant appeal.

The three statements were appellant's negative responses during his grand jury testimony to questions posed by the prosecutor. Under oath, appellant testified (1) that he had not spoken with anyone other

---

1. Consequently, we do not address appellant's other, by no means frivolous, claim, that the indictment was unconstitutionally vague because it failed to specify which statements the grand jury intended to charge as perjurious.

than his girlfriend about Taylor's shooting; (2) that he had not told anyone he had information regarding who killed Taylor; and (3) that no one ever had spoken to him about Harry Wheeler.[2]

At trial, to prove the falsity of those statements, the government relied exclusively on the testimony of Raina Curtis and her boyfriend Glenn "Petey" Smith. Mr. Smith was Michael Taylor's cousin, and both he and Ms. Curtis were appellant's friends. Ms. Curtis testified that appellant approached her approximately two weeks after Taylor's murder to warn her that Wheeler was trying to get someone to kill Mr. Smith. According to Ms. Curtis, appellant told her "he just came from Sursum Corda, talking to Harry," who had said he wanted to kill her boyfriend because "he think he has something to do with his girlfriend being robbed.... [M]y baby father supposed to robbed [sic] his girlfriend for ... two or three thousand dollars." However, Ms. Curtis testified, appellant never spoke with her "about anything having to do with Michael Taylor's death."

Ms. Curtis conveyed appellant's warning to Mr. Smith, who testified that he then spoke privately with appellant himself. In their conversation, according to Mr. Smith, appellant said he had talked with Wheeler in Sursum Corda and had learned that "Harry wanted to pay somebody to kill [Mr. Smith] because Harry thought [Mr. Smith] and [Michael Taylor] had something to do with his babies' mother getting robbed." Appellant also told Mr. Smith that Wheeler had hired somebody to kill Taylor for the same reason.

We view the foregoing evidence, of course, in the light most favorable to sustaining the jury's verdict, recognizing the jury's right to determine the credibility of the witnesses and draw justifiable inferences from their testimony.[3]

■ To prove a defendant guilty of perjury, the evidence must show that the defendant made a false statement of material fact under oath with knowledge of its falsity.[4] "[A]ctual falsity is necessary to conviction."[5] The government therefore had to present sufficient evidence that at least one of appellant's three challenged statements was false.[6] According to the

---

**2.** As quoted in the indictment, appellant's grand jury testimony on these three points was as follows:

[THE PROSECUTOR]: So other than Michelle, who, if anyone else, did you speak to about the shooting that took place?
[MR. GAFFNEY]: No one else.
[THE PROSECUTOR]: Nobody?
[MR. GAFFNEY]: Nobody.
 * * * *
[THE PROSECUTOR]: Now, has anyone ever spoken to you about Harry Wheeler at all?
[MR. GAFFNEY]: No, ma'am.
 * * * *
[THE PROSECUTOR]: Have you ever told anybody that you had information about who killed Michael Taylor?
[MR. GAFFNEY]: No ma'am.
[THE PROSECUTOR]: Have you ever told anybody that you had information about who killed Michael Taylor?

[MR. GAFFNEY]: No, ma'am.

**3.** *Frendak v. United States*, 408 A.2d 364, 370 (D.C.1979).

**4.** *See* D.C.Code § 22–2402 (2001); *Hsu v. United States*, 392 A.2d 972, 978 (D.C.1978).

**5.** *Id.; see also Bronston v. United States*, 409 U.S. 352, 360, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) ("[T]he perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth.").

**6.** *Murphy v. United States*, 670 A.2d 1361, 1367 & n. 13 (D.C.1996) (holding that when multiple statements are alleged to be perjurious in a single count, the proof need only be sufficient as to one of the statements to sustain the verdict).

venerable "two-witness" rule, "the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment as perjury."[7] The two-witness rule thus "imposes an evidentiary minimum" that the government must meet to satisfy its burden of proving falsity.[8] We agree with appellant that the testimony of Ms. Curtis and Mr. Smith did not meet the evidentiary minimum with respect to any of the three statements at issue.[9]

▬ As explained in *Hsu*, the two-witness rule "is somewhat misnamed today, for while two witnesses will accomplish the task, one witness plus independent corroborative evidence will also suffice."[10] In the latter case, "the independent, corroborative evidence need not be sufficient, by itself, to demonstrate guilt; rather, it need only tend to establish an accused's guilt and be inconsistent with the innocence of the defendant when joined with the one direct witness' testimony."[11] What must be corroborated is the part of the primary witness's testimony that falsifies the defendant's statement.[12] "Corroboration is required for the perjured fact as a whole," though, "and not for every detail or constituent part of it."[13]

▬ The first two statements of appellant at issue—that he had not spoken with anyone other than his girlfriend about Taylor's shooting and that he had not told anyone he had information regarding who killed Taylor—were contradicted by Mr. Smith's testimony that appellant told him Wheeler had arranged for Taylor to be murdered. Mr. Smith's testimony was not corroborated by any independent evidence, however. Neither Ms. Curtis nor anyone else was present when appellant spoke with Mr. Smith. And Ms. Curtis specifically denied that appellant said anything to her about Taylor. As a result, Ms. Curtis neither confirmed the critical part of Mr. Smith's testimony nor furnished independent evidence proving the falsity of appellant's first two statements.

7. *Hsu*, 392 A.2d at 980–81 (quoting *Hammer v. United States*, 271 U.S. 620, 626, 46 S.Ct. 603, 70 L.Ed. 1118 (1926)).

8. *United States v. Diggs*, 560 F.2d 266, 270 (7th Cir.1977). "The policy behind this rule is that a conviction for perjury ought not to rest solely on one man's oath against that of another, and on 'the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted.'" *Id.* at 269 (quoting *Weiler v. United States*, 323 U.S. 606, 609, 65 S.Ct. 548, 89 L.Ed. 495 (1945)).

9. Contrary to the government's contention, appellant preserved his two-witness rule argument for appellate consideration even though he failed to invoke it by name in the trial court. It is enough that he moved for a judgment of acquittal on the ground (among others) that the government had not presented sufficient evidence that his statements were false. *See Newby v. United States*, 797 A.2d 1233, 1237–38 (D.C.2002) ("[A] general motion for acquittal ... is deemed sufficient to preserve the full range of challenges to the sufficiency of the evidence." (internal quotation marks and footnote omitted)).

10. 392 A.2d at 981.

11. *Id.* (internal quotation marks omitted).

12. *See United States v. Weiner*, 479 F.2d 923, 927–28 (2d Cir.1973) (explaining that the independent corroborating evidence "must tend to substantiate that part of the testimony of the principal prosecution witness which is material in showing that the statement made by the accused under oath was false"); *Hsu*, 392 A.2d at 981 (finding sufficient corroboration because "the details within [the corroborating witness's] independent knowledge corroborated [the primary witness's] direct testimony of Dr. Hsu's perjury").

13. *United States v. Chaplin*, 25 F.3d 1373, 1382 (7th Cir.1994) (quoting 7 WIGMORE ON EVIDENCE § 2042, at 369 (Chadbourne rev. 1978)).

■ Appellant's third statement, his denial that anyone ever had spoken to him about Harry Wheeler, was not contradicted by either Ms. Curtis or Mr. Smith. Neither witness was asked whether he or she had spoken to appellant about Wheeler, and neither claimed to have done so. The government argues that because both witnesses testified that *appellant* spoke to *them* about Wheeler, the jury could infer that, in the same conversations, *they* spoke to *appellant* about Wheeler too. That possible surmise is not enough to sustain a conviction for perjury. If either witness in fact had said anything to appellant about Wheeler, it was incumbent on the government to elicit that fact in order to prove that appellant lied when he denied it. The government does not meet its burden of proof in a perjury prosecution if it fails "to pin the witness down to the specific object [of] the questioner's inquiry." [14]

■ It might be suggested that the two-witness rule was satisfied with respect to appellant's denial that "anyone" had spoken to him about Wheeler because both Ms. Curtis and Mr. Smith testified that appellant claimed to have heard Wheeler speak about himself. This suggestion suffers from two flaws, however. First, in common parlance, the question appellant was asked in the grand jury— "has anyone ever spoken to you about Harry Wheeler at all?"—is not normally or readily interpreted as including whether Wheeler spoke about himself. Rather, the question is most naturally understood as inquiring whether other people spoke about Wheeler. The oddity and unnaturalness of the hypothesized interpretation is evidenced by the fact that the government itself never urged it until it was raised as a possibility by a judge of this court at oral argument. Furthermore, from our examination of the transcript of appellant's testimony before the grand jury, we cannot say (and the government has not argued) that such an unusual interpretation was suggested by the context in which the question was asked.[15] Normally, to be sure, "in instances of some ambiguity as to the meaning of a question, it is for the petit jury to decide which construction the defendant placed on the question."[16] But there are limits to that

---

**14.** *Bronston*, 409 U.S. at 360, 93 S.Ct. 595; *see, e.g., United States v. Chestman*, 903 F.2d 75, 81 (2d Cir.1990), *vacated on other grounds*, 947 F.2d 551 (2d Cir.1991). In *Chestman*, the Second Circuit found the evidence insufficient to support a perjury conviction based on the defendant's allegedly false testimony before the SEC that he did not speak with his client Loeb before he made a certain stock purchase at 9:49 a.m. As the court explained, Loeb's testimony that he spoke to Chestman some time prior to 10:30 a.m., even if corroborated by other evidence, failed to establish that Chestman's denial was false:

> The government's focus on the sufficiency of the corroborative evidence disregards an essential element under the two-witness rule—the testimony of at least one witness that purports to establish the falsity of the accused's testimony. In the case at bar, the independent witness, Loeb, was unable to pinpoint when he spoke to Chestman. At

best, Loeb placed the conversation as occurring sometime prior to 10:30 a.m. Regardless of the sufficiency of the proffered corroborative evidence, there is simply no testimony from Loeb that he spoke to Chestman prior to 9:49 a.m. In the absence of testimony from at least one witness placing the conversation prior to 9:49 a.m., the perjury conviction cannot be sustained as to that conversation.

*Id.*

**15.** "A charge of perjury may not be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows." *Fotie v. United States*, 137 F.2d 831, 842 (8th Cir. 1943).

**16.** *United States v. Serafini*, 167 F.3d 812, 820 (3d Cir.1999) (internal quotation marks omitted).

principle. "One such limit is that an excessively vague or fundamentally ambiguous question may not form the predicate to a perjury or false statement prosecution.... [A] question is not amenable to jury interpretation when it is entirely unreasonable to expect that the defendant understood the question posed to him."[17] In the present case, absent any evidence (or argument to the jury, for that matter) that appellant understood the question to encompass statements by Wheeler about himself, we doubt a jury fairly could (or did) find that appellant gave a knowingly false answer based on such an abnormal interpretation of the question.

 Be that as it may, the second flaw is more fundamental. As a corollary of the two-witness rule, it long has been held that "a perjury conviction may not be had solely on the basis of [the defendant's] oral admissions contrary to the allegedly perjurious statement, even if several witnesses testify to the admissions."[18] The premise of this corollary is that "without more, there is no more reason for thinking the admission to have been true and the testimony false than the reverse."[19] The rule that a perjury conviction cannot be sustained on the basis of the defendant's inconsistent statements "is inapplicable when the admission ... is used to corroborate testimony by another witness as to objective facts which themselves afford a basis for finding that the admission represented what [the] defendant knew to be the truth."[20] Here, however, there was no such additional testimony. Apart from their recounting of appellant's admissions, neither Ms. Curtis nor Mr. Smith could testify that Wheeler ever spoke to appellant. Regardless of how we interpret the question appellant was asked in the grand jury, therefore, appellant's admissions to Ms. Curtis and Mr. Smith cannot support his perjury conviction.

Because the evidence was insufficient to support appellant's conviction, we reverse and remand for entry of a judgment of acquittal.

17. *Id.* (internal quotation marks and citation omitted).

18. *United States v. Goldberg,* 290 F.2d 729, 733–34 (2d Cir.1961); *see also, e.g., United States v. Letchos,* 316 F.2d 481, 484 (7th Cir. 1963); *United States v. Nessanbaum,* 205 F.2d 93, 95–96 (3d Cir.1953); *McWhorter v. United States,* 193 F.2d 982, 985 (5th Cir.1952); *cf. Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954) (stating, as a matter of federal evidentiary law, that the government must "introduce substantial independent evidence which would tend to establish the trustworthiness of the statement" before a confession can sustain a conviction); *In re J.H.,* 928 A.2d 643, 652 (D.C.2007) (following *Opper* ).

19. *Goldberg,* 290 F.2d at 733.

20. *Id.* at 734; *see, e.g., United States v. Kahn,* 472 F.2d 272, 284 (2d Cir.1973).